CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 22 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

HARVEY L. MARTIN, JR., )
)
Plaintiff, )
) Civil Action No. 7:10-cv-00423
v. )
)
THOMAS O. WATKINS, )
) **Memorandum Opinion**
Defendant, )
)
and )
) By: James C. Turk
YOKOHAMA TIRE CORP., ) Senior United States District Judge
)
Defendant. )
)

This matter comes before the Court on Plaintiff Harvey L. Martin's ("Martin") motion to remand this case to the Circuit Court for the City of Salem, Virginia. Dkt. 12. Defendants Thomas O. Watkins ("Watkins") and Yokohama Tire Corp. ("Yokohama") responded separately in opposition. Dkts. 15, 16. The Court heard oral arguments on December 8, 2010, and the matter is now ripe for decision. For the following reasons, Martin's motion to remand is **DENIED**.

**I. Background and Procedural History**

Yokohama and the United Steelworkers, Local Union No. 1023 (the "Union") are parties to a collective bargaining agreement ("CBA") which governs the relationship between Yokohama's management personnel and hourly production workers, and defines Yokohama's rights and obligations regarding that relationship. Article I, Section 1(b) of the CBA expressly provides that it governs working conditions in the plant, stating that Yokohama "agrees to meet

with and bargain with the accredited representatives of the Union on all matters pertaining to rates of pay, wages, hours of employment, and *all other working conditions* . . ." CBA at 2 (emphasis added). Article II prohibits harassment in the application of the CBA. *Id.* at 9. Article V sets forth the procedures for resolving employee grievances, and establishes mandatory obligations on the parties in the grievance process. *Id.* at 13–17.

Article V mandates a four-step grievance resolution process. Step 1 requires that an aggrieved employee, "either individually or in company with his Committeeman, shall first discuss the complaint with his immediate Supervisor." *Id.* at 14. If the situation is not resolved, the employee can proceed with his complaint up the chain of command to the Division Chairman. *Id.* Step 2 mandates a meeting between the aggrieved employee, the Division Chairman, the Department Supervisor, and the Division Manager. *Id.* at 15. If the grievance is not resolved in Step 2, Step 3 requires the matter to be referred to the Union Grievance Committee. *Id.* Finally, the employee may appeal the Union Grievance Committee's decision to an arbitrator. *Id.*

In October 2009, Martin was a supervisor, and Watkins was an employee, at Yokohama's Salem, Virginia plant. Martin's complaint, filed in the Circuit Court for the City of Salem, Virginia, alleges that during a Step 1 grievance meeting,[1] Watkins told those present that Martin had, on an earlier occasion, made derogatory and discriminatory statements of a sexual nature to Watkins concerning another plant employee. Dkt. 1, Ex. A at 2. The written grievance states: "Tom Watkins protest [sic] the actions of supervisor Harvey Martin for inappropriate behavior

---

[1] According to Martin's complaint, Watkins made all of his alleged statements on October 6, 2009, the same date as the grievance meeting. Martin asserted at oral argument that *perhaps* not all of Watkins' comments were made at the Step 1 grievance meeting. But, he has not alleged with particularity when these other comments might have been made. Defamation is subject to heightened pleading requirements. While not addressing whether this matter has been pled with sufficient specificity, the Court will consider that Watkins' relevant statements did, in fact, occur at the Step 1 grievance meeting in the absence of any specific allegation to the contrary.

2

and sexual overtures toward him on C shift 10-4-09. All effected [sic] to be made whole in every way." *Id.* at 14. Yokohama investigated Watkins' allegations according to the procedure outlined in the CBA. Martin does not allege that Yokohama's investigation failed to conform to the CBA grievance procedures.

Martin asserts that Watkins' statements constitute tortuous defamation and that Yokohama is jointly and severally liable for ratifying Watkins' defamatory statements under an agency theory. *Id.* at 2–4. Martin claims damages totaling $3,350,000 for his monetary losses, "humiliation, shame, and great emotional distress." *Id.* at 4.

Yokohama removed this case to this Court on September 23, 2010 pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 on the basis that the case presented a question arising under the laws of the United States. Dkt. 1, at 1. On October 21, 2010, Martin filed the instant motion to remand on the basis that his claims do not present a federal question and sound only in tort under Virginia law. Dkt. 12, at 1. Citizenship is not diverse, and this Court may only exercise subject matter jurisdiction if § 1331 so authorizes.

## II. Analysis

### a. "Arising Under" Jurisdiction

Article III of the United States Constitution states that the judicial power of the United States "shall extend to all Cases, in Law and Equity, arising under this Constitution [and] the Laws of the United States . . ." U.S. Const., Art. III, § 2. Congress vests federal courts with the power to hear cases arising under U.S. law pursuant to 28 U.S.C. § 1331, which is narrower in scope than Article III. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 494–95 (1983). A case is deemed to arise under federal law if it is clear from the face of the plaintiff's complaint either (1) that federal law *created* the cause of action; or (2) state law created the cause of action,
3

but federal law is an *essential component* of the plaintiff's complaint. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005); *see also* Erwin Chemerinsky, Federal Jurisdiction 273 (5th ed. 2007).

When state law creates a plaintiff's cause of action, the case might still "arise under" the laws of the United States "if a well-pleaded complaint establish[es] that [the plaintiff's] right to relief under state law requires resolution of a substantial question of federal law." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164 (1997). However, a defendant's assertion of a federal defense to a state law claim does not provide a basis for removal jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 398–99 (1987). Therefore, if it is not apparent from the face of Martin's complaint that his claim requires resolution of a substantial question of federal law, this Court does not have jurisdiction, Yokohama improperly removed the case, and the Court must grant the motion to remand.

**b. "Complete Preemption"**

A state law claim requires resolution of a substantial question of federal law, and therefore is properly removed, if state law in the relevant field has been "completely preempted" by federal law. *Id.* at 393. Under the complete preemption doctrine, a federal court may properly exercise jurisdiction over a claim when the preemptive force of a federal statutory or regulatory scheme is so strong that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (internal citations omitted). In such a case, the state law claim is considered a federal claim, and a defendant may remove the case to federal court. *Id.* Because Watkins' statements arose out of a grievance procedure governed by a collective bargaining agreement, and such agreements are exclusively

4

governed by § 301 of the Labor Management Relations Act ("LMRA"), the Defendants assert that federal law completely preempts Martin's state law defamation claims.

Section 301 confers *exclusive* federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185. Further, § 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these collective-bargaining agreements and includes within that federal law specific performances of promises to arbitrate grievances under collective bargaining agreements." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1975).

The need for § 301 to have preemptory effect has been explained in detail by the United States Supreme Court:

> The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy. With due regard to the many factors which bear upon competing state and federal interests in this area, . . . we cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.

*Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962). The Fourth Circuit has interpreted this to mean that § 301 creates "a body of federal common law" to "promote the peaceable, consistent resolution of labor-management disputes." *McCormick v. AT&T Technologies, Inc.*, 934 F.2d 531, 534–37 (4th Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992).

In short, it is well-established that § 301 completely preempts all state law claims regarding collective bargaining agreements or conduct related to collective bargaining agreements, including grievance procedures governed by collective bargaining agreements. In determining whether Martin's defamation claims are completely preempted by § 301, the central

inquiry is whether his claims require interpretation of the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 412 (1988); *McCormick*, 934 F.2d at 534. If they do, § 301 confers exclusive subject matter jurisdiction on the federal courts. In this case, Martin's defamation claims are inextricably intertwined with the CBA, and neither the Court nor a jury can resolve these claims without interpreting the parties' rights and obligations pursuant to the grievance procedure under the CBA.

In determining whether Martin's defamation claim requires interpretation of the CBA, the Court must look to the elements of defamation in Virginia. Under Virginia law, a *prima facie* case of defamation requires proof (1) of publication (2) of a defamatory statement, (3) which the defendant either knew to be false or, believing it to be true, lacked reasonable grounds for such belief or acted negligently in failing to ascertain the truth. *Goddard v. Protective Life Corp.*, 82 F.Supp.2d 545, 560 (E.D. Va. 2000) (citing *Food Lion, Inc. v Melton*, 250 Va. 144, 150, 458 S.E.2d 580, 584 (1995)). Elements (1) and (3) cannot be resolved without interpreting the grievance procedures set forth in the CBA.

To recover for defamation, Martin must prove that Watkins published the alleged defamatory statements to a third party. *Hyland v. Raytheon Tech. Srvcs. Co.*, 277 Va. 40, 43, 670 S.E.2d 746, 750 (2009). Martin must also show that Watkins' statements did not occur in a privileged setting. *Taylor v. CAN Corp.*, 2010 WL 3430911, at *15 (E.D. Va. Aug. 27, 2010). Statements made in the course of, or in connection with grievance or arbitration procedures conducted pursuant to collective bargaining agreements, are generally regarded by courts across the country as privileged under the law of defamation. 60 A.L.R.3d 1041, § 3; *see also Decoe v. Gen. Motors Corp.*, 32 F.3d 212, 217 (6th Cir. 1994). Defendants assert that Watkins published his statements pursuant to the grievance procedure contained in the CBA. Whether Watkins'

statements are indeed privileged necessarily requires an examination of the grievance process under the CBA. Furthermore, Martin must prove that Yokohama, in allegedly ratifying Watkins' defamatory statements, either knew the statements were false or acted negligently in ascertaining their truth. *Goddard*, 82 F. Supp. 2d at 560. Yokohama's fault simply cannot be assessed without analyzing the grievance procedures, and Yokohama's adherence to them, contained in the CBA.

Because a trier of fact could not evaluate either defendant's liability for defamation without interpreting the grievance procedures set forth in the CBA, Martin's claims are completely preempted by § 301, and this Court has subject matter jurisdiction over the claims because they present a federal question.[2] Numerous Fourth Circuit decisions support this conclusion. *See Shifflett v. ITO Corp. of Baltimore*, 202 F.3d 260 (4th Cir. 2000) (finding subject matter jurisdiction over a defamation claim where claim was based on the investigation of an alleged theft because all claims involved the "manner and propriety of the investigation [and] whether [the defendant] acted wrongfully in its investigation" and resolution required an examination of the collective bargaining agreement); *Papa v. Truland Systems Corp.*, 162 F.3d 1155 (4th Cir. 1998); *Barbe v. Great Atlantic & Pac. Tea Co.*, 940 F.2d 651 (4th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992); *Meadows v. Gen. Elec. Co.*, 875 F.2d 315 (4th Cir. 1989) (holding defamation claim was preempted because the claim involved a determination of the defendant's rights and obligations under the collective bargaining agreement); *Willis v. Reynolds Metals Co.*,

---

[2] Martin urges that because he is not a party to the CBA in question here, the mere existence of the CBA cannot confer subject matter jurisdiction on this Court. However, § 301 "not only preempts state law claims against parties to a collective bargaining agreement, [it] also preempts state law claims against non-signatories where interpretation of the agreement is required for resolution." *Decoe*, 214 F.Supp.2d at 668 (citing *Foy v. Giant Food, Inc.*, 298 F.3d 284, 290n.4 (4th Cir. 2002)). The individual status of the plaintiff or defendant as a signatory does not inform the Court's inquiry. *See Baker v. Farmers' Electronic Coop., Inc.*, 34 F.3d 274, 284–85 (5th Cir. 1994) (holding that "[in] cases involving claims against fellow employees where the question of section 301 preemption has arisen, courts have governed their determinations on the preemption by the necessity of referring to a [collective bargaining agreement] for resolution of the claim rather than by the individual status of the defendant").

840 F.2d 254 (4th Cir 1988) (holding § 301 preempted plaintiff's defamation claim because "the alleged wrong . . . dealt directly with [the defendant's] right pursuant to the collective bargaining agreement to conduct investigations into possible harassment of one employee by a co-worker and the associated right to confront the suspect employee); *Mullins v. Int'l Union of Operating Eng'rs Local No. 77 AFL-CIO of Washington, D.C.*, 214 F.Supp.2d 655 (E.D. Va. 2002), *aff'd*, 60 Fed. Appx. 510 (4th Cir. 2003) (defamation claim involving the investigation of sexually suggestive remarks were preempted because plaintiff's claim was "inextricably intertwined" with the terms of the collective bargaining agreement, even though the grievance procedure in question did not contain explicit investigatory procedures).

### III. Conclusion

Section 301 of the LMRA completely preempts state law tort claims that require interpretation of a collective bargaining agreement. Martin's state defamation claims require an interpretation of the grievance procedures provided in the collective bargaining agreement between Yokohama and the United Steelworkers. Therefore, these claims were properly removed and this Court has subject matter jurisdiction.

For the above reasons, Martin's motion to remand, dkt. 12, is **DENIED**. The Clerk is directed to send copies of this Memorandum Opinion and the accompanying order to counsel of record for both parties.

ENTER: This 22nd of December, 2010.

*/s/ James C. Turk*
Senior United States District Judge