CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 0 3 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

HARVEY L. MARTIN, JR.,

   *Plaintiff,*

v.

THOMAS O. WATKINS,

   *Defendant,*

and

YOKOHAMA TIRE CORPORATION,

   *Defendant.*

Civil Action No: 7:10-cv-00423

Memorandum Opinion

By: James C. Turk
Senior United States District Judge

This matter comes before the Court on Defendant Thomas O. Watkins' ("Watkins") motion to dismiss (Dkt. 7) and Yokohama Tire Corporation's ("Yokohama") motion to dismiss (Dkt. 3). Defendants filed briefs in support of their respective motions (Dkts. 4, 8), Plaintiff Harvey L. Martin ("Martin") responded (Dkt. 24), and Defendants replied (Dkts. 25, 26). The parties did not desire oral argument, and the matter is now ripe for disposition. For the reasons explained below, Defendants' motions to dismiss will be **GRANTED**.

I. **Background and Procedural History**

Yokohama and the United Steelworkers, Local Union No. 1023 (the "Union") are parties to a collective bargaining agreement ("CBA") which governs the relationship between Yokohama's management personnel and hourly production workers, and defines Yokohama's rights and obligations regarding that relationship. Article I, Section 1(b) of the CBA expressly provides that it governs working conditions in the plant, stating that Yokohama "agrees to meet

with and bargain with the accredited representatives of the Union on all matters pertaining to rates of pay, wages, hours of employment, and all other working conditions . . ." CBA at 2 (emphasis added). Article II prohibits harassment in the application of the CBA. *Id.* at 9. Article V sets forth the procedures for resolving employee grievances, and establishes mandatory obligations on the parties in the grievance process. *Id.* at 13–17.

Article V mandates a four-step grievance resolution process. Step 1 requires that an aggrieved employee, "either individually or in company with his Committeeman, shall first discuss the complaint with his immediate Supervisor." *Id.* at 14. If the situation is not resolved, the employee can proceed with his complaint up the chain of command to the Division Chairman. *Id.* Step 2 mandates a meeting between the aggrieved employee, the Division Chairman, the Department Supervisor, and the Division Manager. *Id.* at 15. If the grievance is not resolved in Step 2, Step 3 requires the matter to be referred to the Union Grievance Committee. *Id.* Finally, the employee may appeal the Union Grievance Committee's decision to an arbitrator. *Id.*

In October 2009, Martin was a supervisor, and Watkins was an employee, at Yokohama's Salem, Virginia plant. Martin's complaint, filed in the Circuit Court for the City of Salem, Virginia, alleges that during a Step 1 grievance meeting,[1] Watkins told those present that Martin had, on an earlier occasion, made derogatory and discriminatory statements of a sexual nature to Watkins concerning another plant employee. Dkt. 1, Ex. A at 2. The written grievance stated: "Tom Watkins protest [sic] the actions of supervisor Harvey Martin for inappropriate behavior

---

[1] According to Martin's complaint, Watkins made all of his alleged statements on October 6, 2009, the same date as the grievance meeting. Martin asserted at oral argument that *perhaps* not all of Watkins' comments were made at the Step 1 grievance meeting. But, he has not alleged with particularity when these other comments might have been made. Defamation is subject to heightened pleading requirements. While not addressing whether this matter has been pled with sufficient specificity, the Court will consider that Watkins' relevant statements did, in fact, occur at the Step 1 grievance meeting in the absence of any specific allegation to the contrary.

2

and sexual overtures toward him on C shift 10-4-09. All effected [sic] to be made whole in every way." *Id.* at 14. Yokohama investigated Watkins' allegations according to the procedure outlined in the CBA. Martin does not allege that Yokohama's investigation failed to conform to the CBA grievance procedures.

Martin asserts that Watkins' statements constitute tortuous defamation and that Yokohama is jointly and severally liable for ratifying Watkins' defamatory statements under an agency theory. *Id.* at 2–4. Martin claims damages totaling $3,350,000 for his monetary losses, "humiliation, shame, and great emotional distress." *Id.* at 4. Yokohama removed this case to this Court on September 23, 2010 pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 on the basis that the case presented a question arising under the laws of the United States. Dkt. 1, at 1.

## II. Standard of Review

A claim must be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). To state a claim, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). When evaluating a complaint under Rule 12(b)(6), courts must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While reiterating that "detailed factual allegations" are not required, the United States Supreme Court has specified that pleadings which merely offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" are *not* sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557 (2007)).

3

Ordinarily, motions to dismiss are evaluated on the face of the complaint, without consulting additional documents or evidence. However, this practice does not prevent a court from looking beyond a complaint to rule on a motion to dismiss in some instances. *See Willis v. Reynolds Metals Co.*, 840 F.2d 254, 255 (4th Cir. 1988); *Ali v. Giant Food LLC/Stop & Shop Supermarket Co., LLC*, 595 F.Supp. 2d 618, 624 (D. Md. 2009). A court may rely on a collective bargaining agreement in ruling on a motion to dismiss without converting the motion into one for summary judgment. *Willis*, 840 F.2d at 255 ("While the well-pleaded complaint rule in general forecloses looking beyond the allegations of the complaint [in analyzing a motion to dismiss], there is an exception for situations where the complaint asserted can be resolved only by referring to the terms of the collective bargaining agreement.").

### III. Analysis

#### a. Complete Preemption

Defendants' assert that because Watkins' statements occurred during a grievance procedure governed by the CBA, and the statements are "inextricably intertwined with, and require an interpretation of the CBA," § 301 of the Labor Management Relations Act ("LMRA") completely preempts all of Martin's claims. Section 301 of the LMRA "directs federal courts to fashion a body of federal common law to resolve [employment] disputes." *McCormick v. AT&T Technologies, Inc.*, 934 F.2d 531, 535–37 (4th Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992) (citing *AllisChalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)). "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization." *Id.* (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)).

4

Section 301 preempts state law claims "in that only federal law fashioned by the courts under § 301 governs the interpretation and application of collective bargaining agreements." *Id.* (quoting *United Steelworkers of Am. v. Rawson*, 495 U.S. 362 (1990)). Section 301 preempts state law claims that require the interpretation of the duties of the parties under a collective bargaining agreement. *Id.* Preemption not only precludes contract claims relating to the CBA, but also precludes state law tort claims. "State law tort claims are preempted where reference to a collective bargaining agreement is necessary to determine" liability. *Id.* at 536.

Where wrongful conduct is alleged, and that conduct occurred pursuant to rights and duties under a CBA, § 301 preempts claims arising out of that conduct. *Id.* The rights and duties under the CBA, however, need not be explicitly stated in the actual agreement. A CBA incorporates, in addition to its express provisions, an "industrial common law—the practices of the industry and the shop—[which] is equally a part of the [CBA] although not expressed in it." *United Steelworkers of Ameica v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581–82 (1960). Therefore, a CBA creates implied rights and duties, the contours of which are governed *exclusively* by federal law. *McCormick*, 934 F.2d at 536; *see also Shifflett v. ITO Corp. of Baltimore*, No. 99-1379, 2000 WL 14214, at *4 (4th Cir. Jan 10, 1999) (unpublished) ("The essence of [grievance] provisions [in a CBA] is that [the company] may, 'as the circumstances may require,' investigate and deal with employee [wrongdoing].").

The need for § 301 to have preemptory effect has been explained in detail by the United States Supreme Court:

> The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy. With due regard to the many factors which bear upon

5

> competing state and federal interests in this area, . . . we cannot
> but conclude that in enacting § 301 Congress intended doctrines of
> federal labor law uniformly to prevail over inconsistent local rules.

*Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962). The Fourth Circuit has interpreted this to mean that § 301 creates "a body of federal common law" to "promote the peaceable, consistent resolution of labor-management disputes." *McCormick* 934 F.2d at 534–37 (4th Cir. 1991).

In determining whether Martin's defamation claim requires interpretation of the CBA, and thus should be preempted by § 301, the Court must look to the elements of defamation in Virginia. Under Virginia law, a *prima facie* case of defamation requires proof (1) of publication (2) of a defamatory statement, (3) which the defendant either knew to be false or, believing it to be true, lacked reasonable grounds for such belief or acted negligently in failing to ascertain the truth. *Goddard v. Protective Life Corp.*, 82 F.Supp.2d 545, 560 (E.D. Va. 2000) (citing *Food Lion, Inc. v Melton*, 250 Va. 144, 150, 458 S.E.2d 580, 584 (1995)). In this case, elements (1) and (3) cannot be resolved without interpreting the grievance procedures set forth in the CBA.

To recover for defamation, Martin must prove that Watkins published the alleged defamatory statements to a third party. *Hyland v. Raytheon Tech. Srvcs. Co.*, 277 Va. 40, 43, 670 S.E.2d 746, 750 (2009). Martin must also show that Watkins' statements did not occur in a privileged setting. *Taylor v. CAN Corp.*, 2010 WL 3430911, at *15 (E.D. Va. Aug. 27, 2010). Statements made in the course of, or in connection with grievance or arbitration procedures conducted pursuant to collective bargaining agreements are generally privileged under the law of defamation. 60 A.L.R.3d 1041, § 3; *see also Decoe v. Gen. Motors Corp.*, 32 F.3d 212, 217 (6th Cir. 1994). Whether Watkins' statements are indeed privileged necessarily requires an examination of the grievance process under the CBA. Furthermore, to recover for defamation,

Martin must prove that Yokohama, in allegedly ratifying Watkins' defamatory statements, either knew the statements were false or acted negligently in ascertaining their truth. *Goddard*, 82 F. Supp. 2d at 560. Yokohama's fault simply cannot be assessed without analyzing the grievance procedures, and Yokohama's adherence to them, contained in the CBA.

Because a trier of fact could not evaluate the liability of either defendant for defamation without interpreting the grievance procedures set forth in the CBA, Martin's claims are completely preempted by § 301. *See Decoe v. Gen. Motors Corp.*, 32 F.3d 212 (6th Cir. 1994) (holding that § 301 preempted defamation claim arising from an accusation of sexual harassment made in a grievance procedure because the publication element of plaintiff's claim required examination of the grievance process and the collective bargaining agreement); *Willis v. Reynolds Metals Co.*, 840 F.2d 254 (4th Cir 1988) (holding § 301 preempted plaintiff's defamation claim because "the alleged wrong . . . dealt directly with [the defendant's] right pursuant to the collective bargaining agreement to conduct investigations into possible harassment of one employee by a co-worker and the associated right to confront the suspect employee); *Mullins v. Int'l Union of Operating Eng'rs Local No. 77 AFL-CIO of Washington, D.C.*, 214 F.Supp.2d 655 (E.D. Va. 2002), *aff'd*, 60 Fed. Appx. 510 (4th Cir. 2003) (defamation claim involving the investigation of sexually suggestive remarks were preempted because plaintiff's claim was "inextricably intertwined" with the terms of the collective bargaining agreement, even though the grievance procedure in question did not contain explicit investigatory procedures); *Shifflett*, 2000 WL 14214, at *4 (finding subject matter jurisdiction over a defamation claim where claim was based on the investigation of an alleged theft because all claims involved the "manner and propriety of the investigation [and] whether [the defendant] acted wrongfully in its investigation" and resolution required an examination of the collective

bargaining agreement); *Papa v. Truland Systems Corp.*, No. 97-1451, 1998 WL 539478, at *1 (4th Cir. 1998) (unpublished) (affirming district court's dismissal of plaintiff's state law defamation claim based upon § 301 preemption); *Barbe v. Great Atlantic & Pac. Tea Co.*, No. 89-1566, 1991 WL 136779, at *2 (4th Cir. 1991) (unpublished) (holding that plaintiff's common law defamation claim was preempted because interpretation of the CBA was requires to determine whether the notice of termination sent to the union constituted "publication"); *Meadows v. Gen. Elec. Co.*, No. 88-2914, 1989 WL 50241, at *1 (4th Cir. 1989) (unpublished) (holding defamation claim was preempted because the claim involved a determination of the defendant's rights and obligations under the collective bargaining agreement), *cert. denied*, 502 U.S. 1059 (1992).

Because § 301 preempts state law claims in this case, only federal law can create a valid cause of action for Martin. Martin, however, does not assert a federal claim in his complaint. Therefore, Martin has not stated a claim on which relief can be granted.

### IV. Conclusion

Section 301 of the LMRA completely preempts state law tort claims that require an interpretation of a collective bargaining agreement. Evaluating Martin's defamation claims necessarily involves an analysis of the grievance procedures governed by the collective bargaining agreement between Yokohama and the Union. Accordingly, state law cannot give rise to a cause of action arising out of the grievance process. Martin therefore does not state a claim on which relief can be granted and dismissal is proper.

For the above reasons, Defendants' motions to dismiss (Dkts. 3,7) are **GRANTED**. The Clerk is directed to send copies of this Memorandum Opinion and the accompanying order to counsel of record for both parties.

**ENTER**: This 2nd day of March, 2011.

_____
Senior United States District Judge